JAMES W. COLT, Respondent, *v.* THE FOUNDATION COM-
PANY, Appellant.

Contract — evidence — meaning of words " net profit " in
agreement to pay commission on net profit of work procured
— sum for overhead, allocated to particular work done properly
deductible from compensation — exclusion of evidence bearing
on subject reversible error.

The words " net profit," in an agreement whereby defendant
promised to pay to plaintiff a " commission of ten per cent of the
net profit " derived from any business he might procure for it, do
not mean the entire commissions which should have been or which
were received upon a contract secured by plaintiff for defendant, by
the terms of which defendant was to receive as compensation fifteen
per cent of the cost of the work but which expressly excluded from
the definition of " cost " any charge for services of officers or engineers,
its business or purchasing system, engineering skill, experience and
organization. Defendant in determining the actual amount of " net
profit " might deduct a sum for general overhead properly allocated
to this particular contract and confined to such items as might fairly
be found to have some relation to the work done. The exclusion of
all evidence bearing on the subject, in an action by plaintiff to recover
his commissions, was, therefore, reversible error.

*Colt* v. *Foundation Co.*, 218 App. Div. 831, reversed.

(Argued May 12, 1927; decided May 31, 1927.)

APPEAL, by permission, from a judgment of the Appel-
late Division of the Supreme Court in the first judicial
department, entered December 28, 1926, unanimously
affirming a judgment in favor of plaintiff entered upon
a verdict.

*Frank H. Hiscock* and *Vermont Hatch* for appellant.
The trial court erred in its rulings on the question of
what constituted net profits under the contract. (*Title
Guaranty & Trust Co.* v. *Pam*, 192 App. Div. 268;
232 N. Y. 441; *Gaul* v. *Kiel & Arthe Co.*, 199 N. Y. 472;
*Hoggson Bros.* v. *Spiekerman*, 175 App. Div. 144; *Curren*

v. *Ryan*, 187 App. Div. 6; 227 N. Y. 626; *Whyte* v. *McTaggart*, 31 Western L. R. 654; *Vernon Metal & Produce Co., Inc.*, v. *Joseph & Bros. Co.*, 241 N. Y. 544; *Stilphen* v. *Elliott*, 53 Utah, 579; *Boisnot* v. *Wilson*, 109 App. Div. 569; *Camp* v. *Treanor*, 142 N. Y. 478; *Schraeder* v. *Frankel*, 117 App. Div. 97; 191 N. Y. 545; *Hayes* v. *American Bridge Company*, 127 App. Div. 576; *Jennery* v. *Olmstead*, 90 N. Y. 363; *Buning* v. *Kittel*, 7 N. Y. Supp. 485; *Danolds* v. *Lord*, 83 Hun, 359.)

*Evarts L. Prentiss* and *James G. Moore* for respondent. The plaintiff properly established the damage to which he was entitled in accordance with the terms of his contract with the defendant. (*Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181.) The evidence of payments made by the defendant, and claimed as deductions in arriving at defendant's net profit upon the French contract, was properly excluded as evidence of payments not connected with the contract. (*Stilphen* v. *Elliott*, 53 Utah, 579; *Matter of British Columbia & Vancouver Island Spar Lumber & Saw Mill Co.* [*Ltd.*], *Stamp's Claim*, 25 L. T. Rep. [N. S.] 653; *Daintrey* v. *Evans*, 148 App. Div. 275; *Paine* v. *Howells*, 90 N. Y. 661.)

Andrews, J. During the years 1917 and 1918 The Foundation Company did a large business. It made many contracts to do specific construction work of all kinds at various places for different persons. It had about 30,000 employees and necessarily maintained large general offices and an executive, engineering and supervising force. Such being the situation known to Mr. Colt in September, 1917, the parties entered into a contract. Therein the defendant agreed " on whatever business you [Colt] may obtain for us abroad we will pay you a commission of ten per cent. of the net profit derived from such business." Later a contract was in fact made with the French government by the defendant for the

1927.] Opinion, per ANDREWS, J. [245 N. Y. 275]

construction of certain ships. The jury has found, with testimony to support the finding, that this contract was secured by Mr. Colt. It provided that the government would pay the "cost of the ships," defining what was meant by such cost in detail. There were many items included, among them the expenses of any local office charged with the execution of the contract; but there was expressly excluded from the definition any charge for services rendered by officers or engineers of the contractor from the main office. The contractor was also to furnish free of charge "its business and purchasing system, engineering skill, experience and organization, and generally its ability to organize and equip the yards with experienced men· as well as properly to direct the same." For all this it was to receive a commission of fifteen per cent of the cost of the ships.

Obviously it was hoped that a part of this fifteen per cent would be net profits available for any purpose for which The Foundation Company might choose to use them. Treating this individual contract as an independent transaction, it is equally obvious that the whole might not be so treated. If officers or engineers from the main office, if its purchasing or general supervisory force, if its clerks and stenographers devoted a portion of their time to this particular piece of work, if a part of its main office was now and then devoted to this same purpose, to it, at least, net profits would be diminished by a proper allowance for such time and space.

We see no reason why the same rule should not be applied to the plaintiff when he seeks to recover "ten per cent of the net profit derived from such business." That is what the parties must have understood. The language is clear. Net profit is to be gained — gained by The Foundation Company. As is said later in this same agreement, a statement of this business is to be rendered from time to time "showing the profit whatever it may be the Company may make from it." When its net

profits are determined then Mr. Colt is entitled to ten per cent thereof. This percentage is not to be fixed by what the French government may pay by way of commissions. He knew the " cost of the ships " did not cover every expense to which the defendant would be put in order to execute the contract. Certain necessary items were expressly excluded. These he must have had in mind when he spoke of net profit derived from this particular contract. (*Vernon Metal & Produce Company, Inc.,* v. *Joseph & Brothers Company,* 241 N. Y. 544; *Title Guarantee & Trust Company* v. *Pam,* 232 N. Y. 441.)

That this is the proper construction of the contract is illustrated by the decision reached in the courts below. Fifteen per cent on the total cost of the ships would have amounted to $701,367.51. If by " net profit derived from the business" was meant the entire commissions to which under the contract the defendant would have become entitled, the percentage to Mr. Colt should have been based on this sum. The Foundation Company was allowed, however, to deduct $54,550.79 as liquidated damages for delay. It actually received but $646,816.72. Not only this. It was also allowed to deduct $181,933.33 paid by it to a third party for permission to make use of certain patents. " Net profit " does not mean, therefore, the entire commissions which should have been or which were received.

We hold that the defendant in determining the actual amount of these net profits might deduct a sum for general overhead properly allocated to this particular contract. What this sum may be is not now before us. It must be fixed upon a new trial. Doubtless it will be confined to such items as may fairly be found to have some relation to the work done upon these ships. But the exclusion of all evidence bearing upon the subject was an error which requires a reversal of the judgment appealed from.

Other exceptions to the exclusion of testimony appear

on the record.    Some $30,000, for instance, was paid to one Graham.    But the connection of the payment with this contract is not shown.    Other alleged erroneous rulings are discussed by the appellant.    They may not again appear and, whether right or wrong, we need not now pass upon them.

The judgments appealed from should be reversed and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, CRANE, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment accordingly.